# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GREGORY MORRIS                              CIVIL ACTION

VERSUS                                      NO. 16-15905

PELLERIN MILNOR CORPORATION                 MAGISTRATE JUDGE
                                            JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

In this employment discrimination case, plaintiff, Gregory Morris, alleges that

his former employer, Pellerin Milnor Corporation ("Milnor"), subjected him to a

racially hostile work environment and retaliated against him for having complained

about the harassment, ending in his termination, in violation of Title VII 42 U.S.C. §

2000e-5 et seq., and 42 U.S.C. § 1981a.[1]  Complaint, Record Doc. No. 1.  This matter

was referred to a United States Magistrate Judge for all proceedings and entry of

judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.

Record Doc. No. 11.

Milnor moved for summary judgment on all of plaintiff's claims, arguing that

Morris cannot establish a prima facie case of any of his claims or that, if he can make

---

[1]Section 1981a provides only a damages remedy and creates no substantive right or cause of action.  Roberts v. Lubrizol Corp., No. 4:12-3272, 2013 WL 12099843, at *4 (S.D. Tex. June 28, 2013) (citing Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998)); accord Taplin v. Ellington, No. 3:12-CV-8-CWR-FKB, 2012 WL 2886712, at *5 (S.D. Miss. July 13, 2012) (citing Huckabay, 142 F.3d at 241); Bennett v. Calabrian Chems. Corp., 324 F. Supp. 2d 815, 839 (E.D. Tex. 2004), aff'd, 126 F. App'x 171 (5th Cir. 2005) (citing Huckabay, 142 F.3d at 241).  Thus, Section 1981a applies only if "plaintiff otherwise establishes intentional discrimination on the part of the employer under another substantive act."  Bennett, 324 F. Supp. 2d at 839 (citing Huckabay, 142 F.3d at 241); accord Roberts, 2013 WL 12099843, at *4.

out a prima facie case, he has no evidence to rebut Milnor's legitimate reasons for its actions. Record Doc. No. 17. The motion is supported by the declaration under penalty of perjury of defendant's Human Resources Director, Sidney J. Lacoste, Jr.; excerpts from Lacoste's and plaintiff's depositions; and exhibits from the depositions and from plaintiff's employment records. Morris filed a memorandum in opposition, which is supported by exhibits, excerpts from Lacoste's deposition, an affidavit and a sworn statement. Record Doc. No. 20.

Milnor received leave to file a reply memorandum that included a new declaration under penalty of perjury and other new exhibits. Record Doc. Nos. 21, 22, 23. Plaintiff was provided an opportunity to file a surreply memorandum to respond to the new evidence. Record Doc. No. 24; Fed. R. Civ. P. 56(e)(1). He filed a surreply to which he attached additional evidence. Record Doc. No. 27.

Having considered the complaint, the record, the submissions of the parties and the applicable law, **IT IS ORDERED** that the motion is GRANTED for the following reasons.

I.    STANDARDS OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. _Capitol Indem. Corp. v. United States_, 452 F.3d 428, 430 (5th Cir. 2006) (citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden

of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the

necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint.""" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

II.    THE UNDISPUTED MATERIAL FACTS

The competent summary judgment evidence establishes the following material facts, which are accepted as undisputed solely for purposes of the pending summary judgment motion. Milnor designs and manufactures industrial laundry equipment at its facility in Kenner, Louisiana. Employees in the positions of Assembler I, II, III and IV wire controls and harnesses for different product lines in the facility's Electrical Shop.

Morris, who is African-American, began working for Milnor through a temporary agency as an Assembler I in December 2011. He was promoted to Assembler III and was hired full-time in September 2013. He held that job until Milnor terminated him on October 22, 2015.

Milnor distributes and explains its anti-harassment, anti-retaliation and conflict resolution policies to new employees during every employee orientation. Declaration of Milnor's Human Resources Director Sidney J. Lacoste, Jr., Defendant's Exh. A at ¶¶ 8-10; Sexual Harassment Policy; Policy Against Harassment, Discrimination, and Retaliation; and Problem Resolution Policy, Defendant's Exhs. C and D. At his full-time employee orientation, Morris signed a sheet stating that he had received the policies. Defendant's Exh. E, Employee Orientation Sheet dated September 26, 2013. Although he did not recall having received the policies, he knew throughout his employment that they existed, that discrimination was illegal and that he could report incidents of discrimination or harassment to his supervisor, management or human resources. Deposition of Gregory Morris, Defendant's Exh. B at pp. 78, 80-84.

Javier Cruz was plaintiff's hourly work coordinator. Jim Slay was Cruz's and plaintiff's salaried supervisor until early January 2015, when Slay was transferred to a different department and was replaced by Danny Randolph. When they were plaintiff's supervisors, Slay and Randolph reported to Cell Manager Frank Zito, who supervised the Electrical Shop.

Morris neither saw nor experienced any race discrimination or harassment at Milnor before July 28, 2014. Id. at pp. 84, 95-98, 100-01, 103-06. On that day, he found a cable and some wires in the shape of a hangman's noose on his table when he arrived at work. Id. at pp. 100-01, 107, 110-12; photographs taken by Morris on July 28, 2014, Defendant's Exh. F. Milnor argues that the wires were not actually a noose and were typical of wires found at the facility. For summary judgment purposes, this factual dispute is resolved in favor of plaintiff's testimony that he perceived the wires as a noose despite the lack of an adjustable knot and that it was not like other wires then used in the Electrical Shop.

Morris immediately reported the noose to his work coordinator, Cruz. Plaintiff testified that Cruz said he would take care of it. To remind Cruz, Morris hung the wire on the wall by his desk, where it remained for about a month. Deposition of Gregory Morris, Defendant's Exh. B at pp. 110, 113-14, 117-18, 121. According to defendant's evidence, Cruz later denied that Morris had reported the noose to him. Memorandum to file by Steve Harris regarding events of September 1-17, 2014, Defendant's Exh. G; Javier Cruz's undated, handwritten statement, Defendant's Exh. H. This factual dispute is resolved in favor of plaintiff's testimony that he reported the noose to Cruz.

Cruz neither investigated nor reported plaintiff's complaint to any higher level supervisor. Morris believes that Cruz forgot about it and that Cruz's failure to act and

his later denial that Morris had reported the noose to him were <u>not</u> intentional discrimination or harassment. Morris deposition, Defendant's Exh. B at pp. 123-24.

Morris did not report the noose to any manager until September 1, 2014, when he complained to Employee Relations Manager Steve Harris that Zito had been intimidating him by watching him work, questioning what he was doing and complaining about his use of his cell phone at work, which Zito had not done before July 28, 2014. During their conversation, Morris showed Harris the noose. <u>Id.</u> at pp. 122-26, 134-40.

Harris immediately conducted an investigation. He obtained a written statement from Cruz, who did not recall Morris complaining about a noose. Harris memo to file, Defendant's Exh. G; Cruz statement, Defendant's Exh. H. Harris spoke to Zito, who denied that he watched Morris more than he watched anyone else in the Electrical Shop. Zito explained that he had been in the shop more often because he was monitoring it while Slay was absent and was also checking frequently on the progress of an inventory count in a nearby storage area. Zito admitted having counseled Morris about using his cell phone at work. Harris determined that the wire was not a noose because it was typical of wires found in the shop and, unlike a noose, had no adjustable knot. He advised Morris on September 4 and 17, 2014, that no one whom Harris had interviewed had any information about a noose. Harris memo, Defendant's Exh. G.

On Thursday, September 25, 2014, Human Resources Director Lacoste orally warned Morris about violating his confidentiality agreement by posting photographs of Milnor's proprietary designs on plaintiff's Facebook page. Lacoste also orally counseled Morris about the need to wear safety glasses while working. Morris had never had any prior contact with Lacoste. Lacoste testified that the oral counseling was "no big deal," "didn't result in an issue" and was not a disciplinary warning or write-up. During their conversation, Morris told Lacoste that he was dissatisfied with the outcome of Harris's investigation into the noose incident. Lacoste, who was hearing about the incident for the first time, told Morris that he would personally re-investigate it. Deposition of Sidney J. Lacoste, Jr., Defendant's Exh. N at pp. 48-50; Lacoste declaration, Defendant's Exh. A at ¶ 11; Morris deposition, Defendant's Exh. B at pp. 125, 142-44, 153-60; Lacoste memorandum to file dated September 25, 2014, Defendant's Exh. I.

At that time, Milnor employees did not work on Fridays. Lacoste deposition, Defendant's Exh. N at p. 86. Between Monday, September 29 and Thursday, October 2, 2014, Lacoste investigated plaintiff's complaint. He began by trying to view security videotape of plaintiff's work station from July 28, 2014, but the videotape had already been overwritten. Lacoste interviewed several of Morris's co-employees and asked Harris to re-interview the same individuals and obtain their written statements. Id. at pp. 88-89. Despite these efforts, Lacoste was unable to

determine how the wire arrived on plaintiff's work table or who put it there. Lacoste declaration, Defendant's Exh. A at ¶ 13; Lacoste memorandum to file dated September 30, October 1 and October 2, 2014, Defendant's Exh. J; Lacoste memorandum to file dated October 2, 2014, Defendant's Exh. K.

On Tuesday, September 30, 2014, Morris filed a discrimination charge regarding the noose with the Equal Employment Opportunity Commission ("EEOC"). Lacoste received notice of the charge on October 8, 2014. Lacoste deposition, Defendant's Exh. N at pp. 86-87.

On October 8, 2014, Lacoste reported to Morris that, while Lacoste had found no evidence that the wire was a noose or that the incident was racially motivated, Milnor was committed to its anti-harassment policies. Lacoste told Morris that he would re-circulate the policies to all employees. Lacoste offered Morris a lateral transfer to another department that would have afforded plaintiff a faster track for advancement to Assembler IV, but Morris declined the offer. Lacoste asked Morris to report directly to him any future harassing or discriminatory incidents. Id. at pp. 89-90; Lacoste declaration, Defendant's Exh. A at ¶ 14; Morris deposition, Defendant's Exh. B at pp. 161-63, 185; Lacoste memorandum to file dated October 8, 2014, Defendant's Exh. L.

Morris never complained to any manager about further discrimination or harassment. On October 15, 2014, Lacoste distributed updated versions of Milnor's

anti-harassment and conflict resolution policies to all employees and conducted a managers' meeting to reiterate Milnor's commitment to equal employment opportunities and a harassment-free work environment. Lacoste declaration, Defendant's Exh. A at ¶ 16.

Plaintiff does not know who put the noose on his work table, but speculates that it was Zito, with whom he had previously had very little contact. Morris suspected Zito because Zito usually arrived at work before plaintiff and because Zito began to harass Morris the day after the noose appeared. Morris claims that the harassment intensified after he filed his discrimination charge on September 30, which Lacoste received on October 8, 2014. On December 22, 2014, plaintiff filed a charge of retaliation with the EEOC.

The incidents that Morris claims were retaliatory or harassing consisted primarily of Zito watching Morris more closely than other employees, questioning what he was doing and "constantly scrutiniz[ing]" him. Morris deposition, Defendant's Exh. B at pp. 127-28, 149-53, 167-70, 206; plaintiff's "Documentation of Events at Pellerin Milnor" provided to the EEOC, detailing all significant acts of alleged harassment from August 28, 2014 through March 25, 2015, Defendant's Exh. M. Specific incidents of which plaintiff complains include: (1) installation of a video camera aimed at his desk for a brief period in October 2014, which Morris attributed to Zito, after plaintiff reported that tools had been stolen from his work

station, Morris deposition, Defendant's Exh. B at pp. 174-75; Lacoste declaration, Defendant's Exh. A at ¶ 17; plaintiff's "Documentation of Events at Pellerin Milnor," Defendant's Exh. M at ¶ 20; (2) Lacoste's statement on September 25, 2014 that Milnor could sue plaintiff for revealing trade secrets after Morris posted photographs of Milnor's proprietary circuit on Facebook, Morris deposition, Defendant's Exh. B at pp. 98-99; (3) plaintiff's reassignment for several weeks from an Assembler IV table to "the box section" to perform tasks usually done by less skilled workers, while a man whom Morris was training worked in plaintiff's own section, id. at p. 176; (4) Lacoste falsely accusing Morris of sexual harassment and giving him an oral warning about it in September 2015, Lacoste declaration, Defendant's Exh. A at ¶ 18; Morris deposition, Defendant's Exh. B at pp. 206-09; plaintiff's email to the EEOC dated September 28, 2015, Defendant's Exh. O; and (5) selective enforcement against plaintiff of Milnor's policy banning cell phone use at work, which Morris assumed was applicable to all employees, including managers, but which allegedly was not enforced against Zito or Caucasian employees.  Id. at p. 178.

Morris was not formally disciplined at any time from July 28, 2014 until his termination on October 22, 2015, except for a written warning for dishonesty on March 27, 2015.  During that time, he occasionally received oral counseling or warnings regarding deficiencies in his work performance, failing to wear his safety glasses, using his cell phone during work hours and a sexual harassment claim by a

female employee. None of the oral or written warnings resulted in any demotion, decreased pay or hours, or materially adverse change in his working conditions.

In January 2015, Randolph and Lacoste informed Milnor's employees that "overtime" work on Fridays was now mandatory. Morris testified that Lacoste pushed him three times during an overtime meeting, but could not recall the date. Morris deposition, Defendant's Exh. B at pp. 170-71.

A former co-worker, Rene Artur Paige, states in an affidavit that he and Morris attended a meeting about mandatory overtime on February 5, 2015, at which Lacoste stated that Paige was in his way and pushed Paige into Morris. Paige avers that he fell onto another seated employee. He states that he was then turned away from Morris, but when he looked back, he saw Morris getting up off another employee. Paige states that Morris said that Lacoste had pushed him. Plaintiff's Exh. IV. Paige's affidavit is clear that he did not see Lacoste push Morris. Paige's statement regarding what Morris told him about being pushed is inadmissible hearsay. Fed. R. Evid. 801(c).

On March 25, 2015, plaintiff's supervisor Randolph gave him a written warning after Randolph determined that Morris had provided false information regarding why he had neither called in nor returned to work following a mid-day doctor's visit on March 17, 2015. Although Morris could have been terminated for dishonesty, he was given a written warning and advised that "future unexcused absences from work and/or future misrepresentations to management regarding this matter, or any other

matter, may warrant further disciplinary action, up to and possibly including termination of employment." Morris deposition, Defendant's Exh. B at pp. 209-13; written warning dated March 25, 2015, Defendant's Exh. Q.

During the week of October 12, 2015, almost 15 months <u>after</u> the noose incident, defendant told its Assemblers that they were expected to work overtime from 6:00 a.m. to 12:00 p.m. on Friday, October 16, 2015. Morris told his supervisor that he had a doctor's appointment that Friday morning. Based on plaintiff's history of missing overtime Fridays because of doctors' appointments or other excuses, of resisting Friday work (Morris deposition, Defendant's Exh. B at pp. 237-38, 240, 242) and of past dishonesty about why he had missed work because of doctors' appointments, Lacoste did not believe Morris. Lacoste arranged for Morris to be placed under surveillance on October 16, 2015. Defendant's Exh. N at pp. 94-95. The surveillance revealed that Morris did not leave his house until approximately 12:25 p.m. and did not visit any doctor that day.

On Monday, October 19, 2015, Morris gave a doctor's note to Lacoste and Harris, which indicated that plaintiff had seen a doctor in Baton Rouge on the morning of October 16, 2015. Morris told the managers that he had missed work on October 16th because he had gone to a doctor in Baton Rouge. Because he had obviously falsified the doctor's note and had previously been warned about being

dishonest, Milnor terminated plaintiff's employment on October 22, 2015 for the stated reasons of dishonesty and falsifying documents.

Morris filed a claim for and was awarded unemployment compensation benefits. He testified falsely under oath at his unemployment hearing in January 2016 that he had seen a doctor on October 16, 2015 and had presented a valid doctor's note to Milnor. However, Morris admitted during his deposition in the instant lawsuit that he did <u>not</u> go to a doctor on October 16, 2015; that he stole the doctor's note from his girlfriend; and that his sister forged the note for him.

## III.    DISPUTED, BUT IMMATERIAL, FACTS

Morris relies on a fact dispute concerning Milnor's written documentation of five instances when he was orally counseled by his supervisor, Jim Slay, between February 6 and July 24, 2014, before plaintiff found the noose on July 28, 2014. It is undisputed that Slay kept contemporaneous notes on his calendar of these five minor incidents on February 6, April 16, July 21, July 22 and July 24, 2014. It is also undisputed that Lacoste, not Slay, prepared the typewritten documentation of these events. Defendant's Exh. P. Lacoste testified that he typed the notes based on information that Slay orally provided to him from Slay's contemporaneous notes and that Slay signed the typed notes in Lacoste's presence. The typed notes were never placed in plaintiff's personnel file, but Lacoste kept them in a work file. Lacoste decided that he needed written documentation after he learned that Morris had a

contentious incident with a supervisor, Donald Adams, on July 22, 2014, which is described in one of the notes. Morris admitted that he had a confrontation with Adams, although he disputed the details of how it happened. Morris deposition, Defendant's Exh. B at pp. 219-20. Lacoste could not recall when he learned of the incident between plaintiff and Adams. When Lacoste contacted Slay to find out whether Slay had counseled Morris about that incident, Lacoste asked Slay to tell him about any similar, minor incidents involving any employee, not just Morris, so that those could also be documented. Some of the typed notes in the record concern other employees. Lacoste typed the notes "way after" the dates of the incidents documented in them. He thought he did so while Morris was still employed at Milnor and probably after Slay was transferred to a different department on January 6, 2015. Slay was transferred in part because of his failure to keep up with company paperwork as he should have. Lacoste deposition, Plaintiff's Exh. III at pp. 58-65, 67-68, 69-73; Oral statement of James F. Slay, Jr., Plaintiff's Exh. V, at p. 6; Declaration under penalty of perjury of James F. Slay, Jr., Defendant's Exh. V at ¶ 6.

The fact dispute arises because Slay orally answered questions from plaintiff's counsel in a sworn statement before a court reporter on July 28, 2017. Slay oral statement, Plaintiff's Exh. V. Slay said in this statement that the signature on the note dated February 6, 2014 "doesn't look like mine," id. at p. 5; that the signature on the April 16, 2014 note was "closer, but it doesn't look like mine," id. at p. 6; that he

16

could not identify the signature on the July 21, 2014 note, id.; that the signature on the July 24, 2014 note was not his, id. at p. 7; and that the signature on the July 22, 2014 note was "close to my signature." Id. Slay was not asked and did not say that he did not report these events to Lacoste.

About two months after his oral statement, Slay provided defendant with a written declaration under penalty of perjury on October 4, 2017. Slay declaration, Defendant's Exh. V. He stated in this declaration that he had signed all of the typed notes, that he recalled the circumstances reflected in the notes and that the notes were prepared by Lacoste based on Slay's contemporaneous notes in his calendar.

Morris contends that Slay's conflicting statements are evidence that Milnor "manufactured" evidence to discredit plaintiff and that defendant's proffered reasons for its actions were pretextual. The conflicts in the statements undermine Slay's credibility, and credibility determinations cannot be made on summary judgment. Turner v. Kan. City S. Ry., 675 F.3d 887, 892 (5th Cir. 2012). However, the credibility question and fact dispute do not require a trial because whether Slay signed the typed notes is immaterial to the issues raised by Milnor's summary judgment motion for four reasons: (1) Regardless of when the notes were prepared or whether Slay signed them, it is undisputed that Lacoste typed them based on Slay's reports to him, which in turn were based on Slay's own contemporaneous notes; (2) Milnor did not consider these notes to be disciplinary warnings with any consequences and

17

Morris was <u>not</u> disciplined for any reason before he found the noose on July 28, 2014, Morris deposition, Defendant's Exh. B at pp. 214-21; email from Morris to EEOC dated September 28, 2015, Defendant's Exh. O; (3) Morris has provided <u>no evidence</u> that Randolph, who became his supervisor in January 2015, relied on or even knew about any incidents that had occurred before July 28, 2014, when Randolph on March 25, 2015 gave Morris a written warning for dishonesty; and (4) it is undisputed that Lacoste did <u>not</u> rely on any incidents that occurred before July 28, 2014, when he decided in October 2015 to arrange for surveillance of Morris and then to fire plaintiff for dishonesty based on the March 25th warning, the results of the surveillance and plaintiff's subsequent lies to Lacoste and Harris. Lacoste declaration, Defendant's Exh. A at ¶¶ 21-25; Lacoste deposition, Defendant's Exh. N at pp. 94-95. Thus, even if the court resolved the fact dispute in favor of plaintiff's contention that Slay did not sign the notes, it would not change the outcome of this decision.

IV.  <u>ANALYSIS</u>

A.  <u>Outstanding Discovery Does Not Preclude Summary Judgment</u>

Plaintiff's vague contention in his original opposition memorandum and his more specific argument in his surreply memorandum that some discovery requests are outstanding, which should preclude summary judgment, is meritless. "Discovery is <u>not</u> a prerequisite to the disposition of a motion for summary judgment." <u>Skiba v.</u>

Jacobs Entm't, Inc., 587 F. App'x 136, 138 (5th Cir. 2014) (citing Fed. R. Civ. P. 56(d); Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010)) (emphasis added).

The court may defer considering a summary judgment motion or may allow time for discovery only "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Morris has provided no affidavit or declaration and has not specified any facts that the outstanding discovery requests might disclose. In his surreply memorandum, he questions whether Slay's signature on the typed counseling notes is genuine and states that he intends to subpoena a third party to obtain an exemplar of Slay's signature. As discussed above, the genuineness of Slay's signature is immaterial to the issues raised by defendant's summary judgment motion.

Plaintiff has failed to "demonstrate how additional discovery will create a genuine issue of material fact" or to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Jacked Up, L.L.C. v. Sara Lee Corp., 854 F.3d 797, 816 (5th Cir. 2017) (quotations and citations omitted). Accordingly, his request to defer determination of defendant's motion is denied and the court considers the motion based on the current evidentiary record.

B.    Hostile Work Environment

The competent summary judgment evidence establishes that Morris cannot make out a prima facie case of a race-based hostile work environment. To establish this claim, he must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known of the harassment and failed to take prompt remedial action. Minnis v. Bd. of Supervisors, 620 F. App'x 215, 220-21 (5th Cir. 2015) (citing Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)). If the alleged harassment is committed by a supervisor with immediate or higher authority over plaintiff, he needs to satisfy only the first four elements. Parker v. State of La., 323 F. App'x 321, 325 (5th Cir. 2009) (citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001)).

"To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Hernandez, 670 F.3d at 651 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)).

> For harassment to affect a term, condition or privilege of employment,
> it must be "sufficiently severe or pervasive to alter the conditions of the
> victim's employment and create an abusive working environment." To
> determine whether harassment is so severe or pervasive that it alters the
> conditions of the plaintiff's employment, this Court considers a number
> of factors: "the frequency of the discriminatory conduct, its severity,

20

whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance."

Buisson v. Bd. of Supervisors, 592 F. App'x 237, 245 (5th Cir. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

As required on a summary judgment motion, the court resolves in favor of Morris and accepts as undisputed for present purposes his testimony that a piece of cable and wires in the shape of a noose was left on his work table. I agree that a lynching noose in the workplace, especially when displayed to African-American workers, is a particularly heinous and inflammatory indicator of racial animus. Thus, plaintiff in this case has produced evidence to satisfy the first three prongs of the hostile work environment test.

However, binding Fifth Circuit precedent is clear that an isolated incident of the sort occurring in this case is neither sufficiently severe nor pervasive enough to alter the conditions of plaintiff's employment and thereby support a cognizable hostile work environment claim. The Fifth Circuit has found that somewhat similar racially charged, but isolated, incidents were not severe or pervasive enough to support a hostile environment claim. See, e.g., Pickens v. Shell Tech. Ventures, Inc., 118 F. App'x 842, 850 (5th Cir. 2004) (employer's Christmas skit that included white "elves" in black-face and racially insensitive comments by co-employees directed specifically to African-American plaintiff); Mosley v. Marion Cnty., 111 F. App'x 726, 728 (5th

Cir. 2004) ("three incidents involving the use of racial slurs"); <u>Hayatdavoudi v. Univ. of La.</u>, 240 F.3d 1073, 2000 WL 1835143, at *1 (5th Cir. 2000) (co-employee's references to Iranian-American of the Shiite Moslem faith as "Ayatolla Asodollah" and "dead meat" and supervisor's comment that plaintiff was like "the dogs in the desert, howling as the caravan goes by"); <u>Rowan Cos. v. Miller</u>, 180 F.3d 265, 1999 WL 301864, at *1-2 (5th Cir. 1999) (citing <u>Jones v. Flagship Int'l</u>, 793 F.2d 714, 720 (5th Cir. 1986)) (African-American plaintiff found in his locker a piece of rope tied like a noose and a handwritten note stating "wear this to the party tonight").

District courts in the Fifth Circuit, while treating a noose in the workplace as a serious and troubling matter, have found that a single, isolated incident regarding a noose is not severe or pervasive enough to alter the conditions of employment and thereby create a working environment so abusive that an actionable hostile work environment can be found under Title VII. Judge Barbier of this court recently discussed such cases as follows.

> "Under the proper circumstances, the presence of a noose at the workplace might constitute an extremely serious event causing a discriminatory change in the terms and conditions of one's employment." <u>Brooks v. Firestone Polymers, LLC</u>, 70 F. Supp. 3d 816, 861 (E.D. Tex. 2014), <u>aff'd</u>, No. 15-40162, 2016 WL 826349 (5th Cir. Mar. 2, 2016) (citing <u>Hudson v. Cleco Corp.</u>, 539 Fed. Appx. 615, 620 (5th Cir. 2013)) (internal quotation marks omitted). "[T]he presence of a noose can certainly be considered harassment by African American . . . employees." <u>Cargo v. Kan. City S. Ry. Co.</u>, No. 05-2010, 2012 WL 1014707, at *6 (W.D. La. Mar. 22, 2012). The noose [wrapped around a box of Rice-a-Roni, known as "the San Francisco treat,"] in this case was originally intended to tease [an employee unrelated to plaintiff]

about his favorite football team's [the San Francisco 49ers] loss. Later, an unknown person added a black-colored skeleton to the noose, which seems to be a racially motivated act [and which plaintiff, an African-American housekeeper, found and reported].

However, district courts in the Fifth Circuit require more serious incidents for the display of a noose to amount to a hostile work environment. Brooks, 70 F. Supp. 3d at 861 (collecting cases: Carter v. Luminant Power Servs. Co., No. 10-CV-1486-L, 2011 WL 6090700, at *30 (N.D. Tex. Dec. 6, 2011); Filer v. Donley, No. 4:10-CV-310-A, 2011 WL 196169, at *7 (N.D. Tex. Jan. 20, 2011), rev'd on other grounds, 690 F.3d 643 (5th Cir. 2012) (granting summary judgment against employee whose supervisor publicly displayed a noose in his office because no rational jury could find an abusive work environment when the plaintiff viewed the noose only once for a matter of a few minutes); Jimerson v. Garrett Aviation Servs., LLC, No. H-09-0790, 2010 WL 5067692, at *1, 4-5 (S.D. Tex. Dec. 6, 2010) (holding that a rope in the shape of a noose hanging from the rafters at the plaintiff's workplace, that a coworker stated was to "wrap around [the] [p]laintiff's neck," was insufficient to support a hostile work environment claim, as the incident was isolated and unaccompanied by physical contact, and the plaintiff did not flee or seek help.).

While hanging a noose in a workplace is an offensive act that employers should discourage, Plaintiff cannot show that it created a hostile work environment. The addition of a black skeleton to the noose was an isolated incident.

Davis v. Ochsner Med. Ctr., No. 15-88, 2016 WL 1383638, at *3-4 (E.D. La. Apr. 7, 2016) (footnote omitted).

As in these cases, the single appearance of what appeared to plaintiff to be a noose on his work table one morning, without any previous or subsequent instances of overtly racial harassment or discrimination, falls far short of establishing an actionable hostile working environment under the binding precedent set out above. Morris himself was the only person who perpetuated the presence of the noose in the

workplace when he hung it on his wall for about a month. The subjective offensiveness of the incident is undermined by plaintiff's lack of follow up on his complaint to Cruz for about six weeks, until September 1, 2014, when Morris approached Harris to complain about other actions by Zito. Its objective offensiveness is undercut by the conclusions of Harris and Lacoste that the wires did not look like a noose because there was no adjustable knot, by the lack of complaint from anyone else when Morris hung it in plain view for a month, and because it was typical of wires and cables ordinarily found in the shop.

Morris testified that he believed, but he presented <u>no evidence</u> to show, that Zito put the noose on his table. Speculative allegations that a person is prejudiced or treated plaintiff poorly because of his race are "conclusory statements [that are] non-competent summary judgment evidence." <u>Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.</u>, No. 16-11611, 2017 WL 5325807, at *2 (5th Cir. Nov. 13, 2017); <u>accord</u> <u>Delaval v. PTECH Drilling Tubulars, L.L.C.</u>, 824 F.3d 476, 480 (5th Cir. 2016); <u>Carr v. Sanderson Farms, Inc.</u>, 665 F. App'x 335, 338 (5th Cir. 2016) (citation omitted); <u>Waters v. City of Dallas</u>, 540 F. App'x 257, 262 (5th Cir. 2013) (citation omitted); <u>Cavalier v. Clearlake Rehab. Hosp., Inc.</u>, 306 F. App'x 104, 107 (5th Cir. 2009). Plaintiff's mere subjective beliefs, when supported solely by his own self-serving, speculative and conclusory testimony or by speculative and conclusory declarations from third-party witnesses, fail to establish that a material fact issue is in

dispute.  Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 419 n.54 (5th Cir. 2011) (citing Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 343 F.3d 401, 405 (5th Cir. 2003); In re Hinsley, 201 F.3d 638, 643 (5th Cir. 2000)); Strong v. Univ. Health Care Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007); Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004).

Even though there is no evidence in this case that a supervisor or co-worker placed the noose on plaintiff's work table, I nevertheless address the fifth prong of the hostile work environment test, which applies if a co-worker was the perpetrator.  No competent summary judgment evidence raises any material fact issue whether Milnor acted promptly to remedy plaintiff's complaint once he told defendant's human resources managers about it.  Morris does not allege that Cruz intentionally or discriminatorily failed to act when plaintiff told him about the noose, but concedes instead that Cruz probably forgot about it.  It is undisputed that Harris and Lacoste responded immediately when Morris brought the noose to their attention.  They investigated by interviewing employees who might have information, but were unable to identify a perpetrator.  Their inability to discover the perpetrator does not render Milnor's investigations "ineffectual," as Morris argues.  Although Harris and Lacoste concluded that the wire was not a noose, Lacoste nevertheless responded to plaintiff's concerns by re-distributing Milnor's anti-discrimination and anti-harassment policies to its employees, emphasizing Milnor's commitment to enforcing the policies in a

managers' meeting and offering Morris a transfer to a different work area with equal job responsibilities and pay and a faster track for advancement.

Given these undisputed facts, Morris has failed to carry his burden to produce competent evidence that Milnor knew or should have known of the harassment earlier or that it failed to take prompt remedial action. See Cavalier, 306 F. App'x at 107 (defendant acted promptly when it assigned human resources investigator to look into plaintiff's complaint and, although investigator concluded that no illegal harassment had occurred, investigator offered resources to help resolve employee conflict that led to complaint); Harvey v. Maytag Corp., 105 F. App'x 863, 868 (7th Cir. 2004) (although remedial measures may not have prevented all future incidents, employer took prompt reasonable steps to stop racial slurs by unknown employee over facility's public address system by temporarily restricting employee access to system); Rowan Cos., 1999 WL 301864, at *1-2 (citing Carmon v. Lubrizol Corp., 17 F.3d 791, 793-95 (5th Cir. 1994)) (After African-American plaintiff found a piece of rope tied like a noose and a note stating "wear this to the party tonight" in his locker, his employer docked the perpetrators' pay, issued written warnings to all crew members, instructed all supervisors on the gravity of the incident and offered to remove either plaintiff or the perpetrators from the work site. "[T]his constituted prompt remedial action as a matter of law."); Allen v. Babcock & Wilcox Tech. Servs. Pantex, LLC, No. 2:12-CV-00225-J, 2013 WL 5570192, at *11 (N.D. Tex. Oct. 9, 2013) (citing

Cavalier, 306 F. App'x at 107) (Defendant took prompt remedial action when plaintiff's supervisors and human resources personnel met to decide whether to reassign plaintiff or keep her in her department while investigating her hostile work environment claim, and defendant's investigation eventually concluded that her allegations could not be substantiated.).

The other incidents of which Morris complains are that Zito subjected him to increased scrutiny after July 28, 2014; Lacoste warned plaintiff on September 25, 2014 to wear his safety glasses and not to reveal defendant's trade secrets on plaintiff's Facebook page; a camera was installed near his work table for a brief period in October 2014; Zito told him not to use his cell phone while working; Lacoste falsely accused Morris of sexual harassment and gave him an oral warning in September 2015; and plaintiff was transferred to another work table two weeks before his termination, which he perceived as less advantageous for possible future promotion, but which was not a demotion and did not decrease his pay or hours. According to Lacoste, Morris performed Assembler III work at the new table that he had not previously performed, but that he was required to master to become eligible for an Assembler IV position. Lacoste declaration, Defendant's Exh. A at ¶ 19; Morris deposition, Defendant's Exh. B at pp. 77-78, 222-28.

In the totality of the circumstances, these incidents, alone or in combination, were not sufficiently severe or pervasive to create a hostile work environment, nor has

plaintiff proffered any competent evidence that any of these incidents was motivated by racial animus.  A supervisor's temporary changes to schedule and duty assignments and careful monitoring of an employee's job performance, absent any other evidence of prohibited discrimination, do not support a hostile work environment claim.  Hiner v. McHugh, 546 F. App'x 401, 407 (5th Cir. 2013); Ellis v. Principi, 246 F. App'x 867, 871 (5th Cir. 2007); Bryan v. Chertoff, 217 F. App'x 289, 294 (5th Cir. 2007); Escalante v. Holder, No. EP-09-CV-368-KC, 2011 WL 1528472, at *8 (W.D. Tex. Apr. 20, 2011) (citing Ellis, 246 F. App'x at 871-72; McConathy v. Dr. Pepper/Seven-Up Corp., 131 F.3d 558, 563-64 (5th Cir. 1998)).

The eight unverified photographs that Morris submitted to support his allegation that white workers were treated differently than he when they violated company policy regarding cell phone use or safety glasses establish no such thing requiring a trial.  Photographs, Plaintiff's Exh. II.  First, one of the photographs is undated and five are dated in 2012, a time period that is irrelevant to plaintiff's claim of a hostile work environment, which he testified did not begin until July 28, 2014, and to his claim of alleged retaliation after that date.  Only two photographs are dated in 2015 during the relevant time period.  Second, plaintiff's counsel asked Lacoste at his deposition to view 18 photographs in globo, but none are individually identified during the testimony and there is no evidence that the eight photographs that Morris submitted to the court were among those Lacoste viewed.  Even if these eight were

among the 18 shown to Lacoste, he testified without contradiction in the record that the 18 photographs either do not show any violation of company policy regarding cell phone use or safety glasses or, if some photographs depicted a violation and a supervisor knew about it, the employee should have been counseled or disciplined. Lacoste deposition, Plaintiff's Exh. III at pp. 39, 41-47. There is no evidence in the record that any supervisor knew of the violations depicted in the few instances that Lacoste identified or whether any counseling or discipline occurred. Plaintiff's subjective, speculative belief that any supervisor knew of a violation by any particular white employee during the relevant time period and did not counsel or discipline that employee and that such lack of action was race-based is wholly insufficient to create a disputed fact issue. Delaval, 824 F.3d at 480; Eaton-Stephens, 2017 WL 5325807, at *2; Carr, 665 F. App'x at 338; Roberson, 373 F.3d at 654.

Morris testified that Lacoste pushed him three times during an overtime meeting. Morris deposition, Defendant's Exh. B at pp. 170-71. Paige avers in his affidavit that he and Morris attended a meeting about mandatory overtime on February 5, 2015, at which Lacoste pushed Paige, but Paige did not see Lacoste push Morris. Plaintiff's Exh. IV. Even if Paige's statement that Morris told him that Lacoste had pushed Morris is admissible under a hearsay exception and even accepting as undisputed plaintiff's own testimony that Lacoste pushed him at that meeting, Morris

has produced <u>no evidence</u> to support his speculative belief that Lacoste pushed him <u>because of</u> his race.

Finally, Lacoste's decision to order surveillance of Morris as a way to investigate plaintiff's request to be excused from mandatory overtime on Friday, October 16, 2015 because of a purported doctor's appointment was based on plaintiff's history of missing overtime Fridays because of doctors' appointments or other excuses, of resisting Friday work and of having received a written warning for lying about his reason for not calling in or returning to work after a doctor's appointment in March 2015. This single incident of investigation was not sufficiently severe or pervasive to alter a term, condition or privilege of employment, nor is there any competent evidence that Lacoste initiated the surveillance because of racial animus, as opposed to because of the previous incident of Morris lying under similar circumstances. <u>McGarry v. Univ. of Miss. Med. Ctr.</u>, 355 F. App'x 853, 858 (5th Cir. 2009) (citing <u>Shepherd v. Comptroller of Pub. Accounts</u>, 168 F.3d 871, 872-74 (5th Cir. 1999)).

Plaintiff's continuing denial that he lied about his doctor's appointment in March 2015 (Morris deposition, Defendant's Exh. B at pp. 210-12) does not create a material fact issue that Milnor's reasons for conducting surveillance of him in October 2015 were a pretext for discrimination or retaliation. <u>Coleman v. Jason Pharm.</u>, 540 F. App'x 302, 305 (5th Cir. 2013) (citing <u>Haverda v. Hays Cnty.</u>, 723 F.3d 586, 596

n.1 (5th Cir. 2013)); <u>Lemaire v. La. Dep't of Transp. & Dev.</u>, 480 F.3d 383, 391 (5th Cir. 2007).  According to Milnor's written warning regarding the incident, Morris provided false information to his supervisor by claiming that he had been unable to call in or return to work because the anti-inflammatory pills that he claimed were dispensed by the doctor at that visit, which he said he had taken for the first time after the visit, made him feel "drugged" and "woozy."  However, Milnor's investigation revealed that the pills had been dispensed a week earlier and that Morris had taken them twice a day since then.  Written warning dated March 25, 2015, Defendant's Exh. Q.

"'Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.'"  <u>Harris v. Miss. Transp. Comm'n</u>, 329 F. App'x 550, 557 (5th Cir. 2009) (quoting <u>Lemaire</u>, 480 F.3d at 391).  "Management does not have to make proper decisions, only non-discriminatory ones." <u>Delaval</u>, 824 F.3d at 480 (quotation omitted).  "[C]orrect or not, we will not second-guess [defendant's] decision to disbelieve [plaintiff] absent a showing of actual retaliatory [or discriminatory] purpose."  <u>Harris</u>, 329 F. App'x at 557 (citing <u>Lemaire</u>, 480 F.3d at 391).  "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment" in the absence of evidence of an improper motive.  <u>Scott v. Univ. of Miss.</u>, 148 F.3d 493, 509 (5th Cir. 1998), <u>abrogated on other grounds by Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 72

(2000) (citation omitted); <u>accord</u> <u>Delaval</u>, 824 F.3d at 480; <u>Assariathu v. Lone Star</u>
<u>Health Mgmt. Assocs., L.P.</u>, 516 F. App'x 315, 321 (5th Cir. 2013) (citing <u>Jackson v.</u>
<u>Watkins</u>, 619 F.3d 463, 468 n.5 (5th Cir. 2010); <u>Walton v. Bisco Indus., Inc.</u>, 119 F.3d
368, 372 (5th Cir. 1997); <u>Bienkowski v. Am. Airlines</u>, 851 F.2d 1503, 1508 n.6 (5th
Cir. 1988)).

The same principles apply to plaintiff's allegation that Lacoste falsely accused
him of sexual harassment in September 2015. Although Morris denied that he had
engaged in the conduct of which a female employee complained, Lacoste investigated
the complaint by questioning and orally warning Morris. Plaintiff's denial of the
conduct does not create a material fact issue when he has produced no competent
evidence that Lacoste's investigation and warning were racially motivated or that
Lacoste's actions affected a term, condition or privilege of plaintiff's employment.

In sum, Morris has proffered <u>no evidence</u> to carry his burden under Title VII
to establish a prima facie case of a racially hostile work environment based on the
various incidents of which he complains. <u>Minnis</u>, 620 F. App'x at 220-21; <u>Buisson</u>,
592 F. App'x at 245; <u>Hill v. Cleco Corp.</u>, 541 F. App'x 343, 346 (5th Cir. 2013);
<u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002). "'[A] complete failure of
proof concerning an essential element of the nonmoving party's case necessarily
renders all other facts immaterial' and 'mandates the entry of summary judgment' for
the moving party." <u>U.S. ex rel. Farmer v. City of Houston</u>, 523 F.3d 333, 337 (5th

Cir. 2008) (quoting <u>Celotex Corp.</u>, 477 U.S. at 323). Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's hostile work environment claim.

C. <u>Retaliation</u>

Morris alleges that the same incidents that occurred after July 28, 2014 discussed above in connection with his hostile work environment claim and the termination of his employment were in retaliation for his protected activity of complaining about the noose and filing two EEOC charges.

> Under our Title VII retaliation framework, the initial burden rests with the employee to produce evidence: (1) that he participated in an activity protected by Title VII, (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity. This establishes the employee's prima facie case, and gives "rise to an inference of retaliation." The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action. Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to "demonstrate that the employer's [stated] reason is actually a pretext for retaliation." In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that "the adverse [employment] action would not have occurred 'but for'" the employee's decision to engage in an activity protected by Title VII.

<u>Alkhawaldeh v. Dow Chem. Co.</u>, 851 F.3d 422, 427 (5th Cir. 2017) (citations omitted).

It is undisputed that Morris engaged in protected activity. However, he cannot establish the second prong of a prima facie case of retaliation with respect to events that occurred before he was fired because he has produced <u>no</u> competent evidence that Milnor took any adverse employment action against him. Assuming without deciding that Morris could establish a prima facie case of retaliation as to his termination, Milnor has produced evidence of a legitimate non-retaliatory reason for firing plaintiff–lying about missing work for a doctor's appointment–but he has provided no evidence to carry his ultimate burden to show "but for" causation.

To establish the second prong of a prima facie case, Morris must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 68 (2006) (quotation omitted).

None of the complained-of actions that occurred before Morris was fired were materially adverse. Not only would these actions not objectively deter a reasonable employee from making or supporting a charge of discrimination, <u>id.</u> at 69-70, they did not deter Morris himself from filing charges on September 28 and December 22, 2014, or from continuing to communicate to the EEOC through September 28, 2015 additional acts that he considered discriminatory and/or retaliatory. Plaintiff's "Documentation of Events at Pellerin Milnor" from August 28, 2014 through March

25, 2015, Defendant's Exh. M; plaintiff's email to EEOC dated September 28, 2015, Defendant's Exh. O.

A counseling letter or "written reprimand, without evidence of consequences, does not constitute an adverse employment action." Thibodeaux-Woody v. Houston Cmty. Coll., 593 F. App'x 280, 286 (5th Cir. 2014) (citing Hernandez v. Johnson, 514 F. App'x 492, 499 (5th Cir. 2013); DeHart v. Baker Hughes Oilfield Operations, Inc., 214 F. App'x 437, 442 (5th Cir. 2007)).

An employee's allegations that personal items were taken from his or her desk, locks on his or her office were changed, and he or she was not allowed to close an office door and was "chastised by superiors and ostracized by co-workers" do not, "[a]s a matter of law, . . . rise to the level of material adversity but instead fall into the category of petty slights, minor annoyances, and simple lack of good manners that the Supreme Court has recognized are not actionable retaliatory conduct." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331-32 (5th Cir. 2009) (quotation omitted).

Heightened scrutiny by supervisors is not a materially adverse action. Magiera v. City of Dallas, 389 F. App'x 433, 437-38 (5th Cir. 2010); see also King v. Louisiana, 294 F. App'x 77, 85 (5th Cir. 2008) (citing White, 548 U.S. at 68; Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000)) (rudeness and unfriendliness by a supervisor and a co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse

employment actions"); Earle v. Aramark Corp., 247 F. App'x 519, 524 (5th Cir. 2007) (citing White, 548 U.S. at 68) (disciplinary write-ups and micro-managing of plaintiff's performance not materially adverse); Grice v. FMC Techs. Inc., 216 F. App'x 401, 404, 407 (5th Cir. 2007) (unjustified reprimands are "trivial" and not materially adverse; supervisor's increased scrutiny would not dissuade reasonable employee from reporting discrimination).

"Indeed, courts have even held that a supervisor's statements to a plaintiff's co-workers that he would 'get rid of' the plaintiff because he was 'creating problems,' and '[b]admouthing or being mean to an employee within the workplace,' are not materially adverse actions capable of sustaining a retaliation claim." Hernandez, 514 F. App'x at 499 (quoting Holloway v. Dep't of Veterans Affairs, 309 F. App'x 816, 819 (5th Cir. 2009) (quoting Jones v. Johanns, 264 F. App'x 463, 469 (6th Cir. 2007))) (internal citations omitted); see also Browning v. Sw. Research Inst., 288 F. App'x 170, 179 (5th Cir. 2008) (no adverse employment action when supervisor allegedly threatened plaintiff's employment).

A reassignment to different duties without any negative effects on plaintiff's job title, grade, hours, salary or benefits or any diminution in prestige or change in standing among his co-workers is not a materially adverse action. Wheat v. Fla. Par. Juvenile Justice Comm'n, 811 F.3d 702, 707 (5th Cir. 2016); Stewart, 586 F.3d at 331-32.

In the absence of competent evidence of a materially adverse employment action, plaintiff's "subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary judgment." Grice, 216 F. App'x at 407 (citing Haley v. Alliance Compressor LLC, 391 F.3d 644, 651 (5th Cir. 2004); Travis v. Bd. of Regents, 122 F.3d 259, 266 (5th Cir. 1997)). Thus, Morris cannot establish a prima facie case of retaliation based on the events that occurred before his termination.

Milnor's termination of plaintiff's employment was a materially adverse employment action that satisfies the second prong of prima facie case. The court assumes without deciding that Morris could make out the third prong of a prima facie case by showing a causal connection between his termination and his protected activity. The causal connection at the prima facie stage is much less stringent than the "but for" causation standard by which Morris must carry his ultimate burden to demonstrate pretext, once defendant has provided evidence of legitimate reasons for its actions. Flanner v. Chase Inv. Servs. Corp., 600 F. App'x 914, 922 (5th Cir. 2015) (citing Montemayor v. City of San Antonio, 276 F.3d 687, 692 (5th Cir. 2001)).

Even assuming that Morris could establish a prima facie case concerning his termination, Milnor is entitled to summary judgment because it has produced evidence of a legitimate, non-retaliatory reason for firing him, which shifts the evidentiary burden to plaintiff to provide competent evidence to create a fact issue that Milnor's

reason was a pretext for retaliation, i.e., that the adverse action would not have occurred "but for" plaintiff's protected activity. Morris fails to carry that burden.

Defendant's burden to articulate a legitimate, non-retaliatory reason "is one of production, not persuasion . . . ." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) (quotation omitted). The employer "'need not prove that it was actually motivated by its proffered reason.' . . . . 'The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.'" Joseph v. City of Dallas, 277 F. App'x 436, 439 (5th Cir. 2008) (quoting Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993)); accord Turner, 675 F.3d at 900. Thus, Milnor must merely set forth, through admissible evidence, "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination [or retaliation] was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (emphasis in original).

Milnor has met its burden of production. Lacoste's declaration and deposition testimony and Milnor's contemporaneous documentation show that Lacoste decided to place Morris under surveillance on Friday, October 16, 2015, based on plaintiff's history of missing overtime Fridays because of doctors' appointments or other excuses, of resisting Friday work and of past dishonesty about why he had missed work because of doctors' appointments. The results of the surveillance contradicted

Morris's presentation of a doctor's note and his statement to Lacoste and Harris on Monday, October 19, 2015, that he had missed work on Friday because he had gone to a doctor in Baton Rouge. Because Morris had obviously falsified the doctor's note (which he finally admitted in his deposition in this case) and had previously been warned about being dishonest, Milnor terminated his employment on October 22, 2015 for dishonesty and falsifying documents. These are legitimate, non-retaliatory reasons.

Morris has presented <u>no evidence</u> to rebut these reasons. His conclusory allegation that he would not have been fired "but for" his protected activity is "speculative and thus cannot preclude summary judgment." <u>Stringer v. N. Bolivar Consol. Sch. Dist.</u>, No. 17-60282, 2018 WL 1192999, at *7 (5th Cir. Mar. 7, 2018) (citing <u>Simmons v. Willcox</u>, 911 F.2d 1077, 1082 (5th Cir. 1990)). Milnor is entitled to summary judgment as a matter of law on plaintiff's retaliation claim.

D.    <u>Racially Discriminatory Termination</u>

Plaintiff's complaint does <u>not</u> allege that his termination was based on race discrimination. As a result, Milnor did <u>not</u> argue in its motion that any such claim should be dismissed. However, Morris appears to argue in his opposition memoranda that his termination was discriminatory as well as retaliatory. To the extent Morris may have alleged a discriminatory termination claim, the court addresses the claim sua sponte.

"Rule 56(a) contemplates a filed motion, but a district court may grant summary judgment without a motion provided the party opposed has notice.  Where a district court fails to provide notice, the error is considered harmless if the party opposed has no additional evidence anyway . . . ."  Delaval v. PTECH Drilling Tubulars, L.L.C., 824 F.3d 476, 479, 481 (5th Cir. 2016) (quotation omitted) (citing Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coord. Unit, 28 F.3d 1388, 1397-98 (5th Cir. 1994)).

"Fed. R. Civ. P. 56 requires the prompt disposition of cases in the absence of any genuine issues of material fact for the court to consider.  Rule 56 requires a court, under the proper conditions, to grant relief to that party which is entitled to such even if it has not been demanded."  Am. Home Assur. Co. v. United Space Alliance, LLC, 378 F.3d 482, 486 (5th Cir. 2004) (citations omitted).  Thus, a district court may grant summary judgment for a nonmovant, grant the motion on grounds not raised by a party or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.  Fed. R. Civ. P. 56(f); C & W Asset Acquisition LLC v. Knox, 104 F. App'x 936, 938 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c) [now Fed. R. Civ. P. 56(f)]; Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 595 (5th Cir. 2000)).  In the instant case, Morris has filed two opposition memoranda and it is clear that he has provided the court with all the evidence he has to support his claims of race discrimination and retaliation.

Accordingly, the court addresses plaintiff's claim of racially discriminatory termination, if any, under the familiar burden-shifting framework. First, Morris must demonstrate a prima facie case with evidence that (1) he was a member of a protected class, (2) he was qualified for the position, (3) his employment was terminated and (4) he was replaced by an individual of a different race, or that defendant treated similarly situated individuals of a different race more favorably than it treated him. Lawson v. S. Components, Inc., 410 F. App'x 833, 835 (5th Cir. 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005); Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)). If he meets this burden, Milnor must produce evidence of legitimate, non-discriminatory reasons for the termination, "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr., 509 U.S. at 507; accord Reeves, 530 U.S. at 142 (2000); Turner, 675 F.3d at 900-01. If defendant carries its burden, "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citation omitted); accord Turner, 675 F.3d at 901.

Morris has proffered no evidence that he was replaced by an individual of a different race or that defendant treated similarly situated individuals of a different race

more favorably than it treated him with respect to his termination for dishonesty.  He therefore cannot establish the fourth prong of a prima facie case.

Even if Morris could demonstrate a prima facie case of racially discriminatory termination, defendant is entitled to summary judgment in its favor for the same reasons discussed in the preceding section regarding plaintiff's retaliatory termination claim.  Milnor has produced legitimate reasons for his termination.  Plaintiff has presented only speculation and subjective belief, but no competent evidence, to rebut these reasons and create a material fact issue that they were a pretext for discrimination.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Milnor's motion for summary judgment is GRANTED and that plaintiff's claims under Title VII and 42 U.S.C. § 1981a are DISMISSED WITH PREJUDICE.  Judgment will be entered separately, plaintiff to bear all costs of this proceeding.  Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this ___10th___ day of April, 2018.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE